# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

GRUNBERG 77 LLC,

                          Plaintiff,

-against-

B.R. GUEST PARENT HOLDINGS, LLC

                         Defendants.

-------------------------------------------------------------------X

Index No.:

Plaintiff designates
New York County as
the place of trial

The basis of the venue
is Plaintiff's principal
place of business

**SUMMONS**

Plaintiff resides at

928 Broadway
County of New York

Date filed:_____

TO THE ABOVE-NAMED DEFENDANTS:

      **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiffs' attorney within twenty (20) days after the service of this summons, exclusive of the date of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York), and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

1

Dated: New York, New York
June 27, 2017

          **CYRULI SHANKS HART & ZIZMOR LLP**
          *Attorneys for Plaintiff*

          By: _____
          Robert J. Cyruli, Esq.
          420 Lexington Ave. Suite 2320
          New York, NY 10170
          (212) 661-6800

*Defendants' Address*:

c/o    The Corporation Trust Company
       1209 Orange Street
       Wilmington DE 19801

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X
GRUNBERG 77 LLC,

                                                  Index No.
                Plaintiff,

                                                  **COMPLAINT**

   -against-

B.R. GUEST PARENT HOLDINGS, LLC

                Defendant.
-----------------------------------------------------------------X

        Plaintiff, GRUNBERG 77 LLC (hereinafter "Landlord"), by its attorneys Cyruli Shanks Hart & Zizmor LLP, complaining of defendant, B.R. GUEST PARENT HOLDINGS, LLC ("Guarantor"), alleges as and for its complaint as follows:

        1.    At all times hereinafter mentioned Landlord was and still is a domestic limited liability company, organized and existing under the laws of the State of New York and the fee owner of the building known as 66 West 77th Street, New York, New York (the "Building").

        2.    At all times hereinafter mentioned Guarantor was and still is, upon information and belief, a foreign limited liability company, organized and existing under the laws of the State of Delaware.

        3.    By written lease agreement dated as of January 24, 2007 (the "Initial Lease"), Landlord's predecessor in interest, Fanny Grunberg & Associates, LLC, as landlord, leased to R.S.V.H. Inc. ("Original Tenant"), as tenant, certain retail space on the ground floor portion of the Building (the "Premises").

        4.    By written agreement entered into in February 2007, Original Tenant, as assignor, assigned its interest in the Initial Lease to 359 Columbus Avenue, L.L.C. ("Tenant"), as assignee.

5. By written lease renewal agreement dated July 12, 2012, (the "Lease Amendment") Landlord's predecessor in interest, Fanny Grunberg & Associates, LLC, as landlord, and Tenant, as tenant, renewed the term of the Lease (the Lease and the Lease Amendment hereinafter collectively referred to as the "Lease").

6. By written agreement dated July 2012 (the "Guarantee"), Guarantor guaranteed to Landlord's predecessor in interest, Fanny Grunberg & Associates, LLC and its successors and assigns certain terms, provisions and conditions of the Lease (the "Guarantee") all as set forth in the Guarantee.

7. By deed dated July 25, 2014, Landlord's predecessor in interest, Fanny Grunberg & Associates, LLC, as grantor, transferred its interest in the Building to Landlord, as grantee.

8. Landlord heretofore served upon Tenant a Notice to Cure dated February 2, 2017 (the "Notice to Cure") setting forth Tenant's defaults under the Lease.

9. The defaults set forth in the Notice to Cure include, but are not limited to:

> violating Articles 6 and 42(C) of the Initial Lease in that the New York City Landmarks Preservation Commission issued a violation against the Building (Violation #071414LANDMK15-0022) concerning the awning installed by Tenant and/or its predecessor in interest; and

> violating Articles: (i) 3 and 42(H) and (ii) 6 and 42(C) and (iii) 42(B) of the Initial Lease in that Tenant has four (4) open electrical permits

> violating Article 42(B) of the Initial Lease which states that "all alterations shall be done in a good and workmanlike manner".

10. The Notice to Cure expired without Tenant having cured the defaults set forth therein.

11. By notice of termination dated March 8, 2017, (the "Notice of Termination") Landlord heretofore terminated the Lease effective as of March 24, 2017.

## AS AND FOR A FIRST CAUSE OF ACTION

12. Landlord repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 11, above, as if fully set forth at length herein.

13. March 2017 was the last month of the term of the Lease due to an effective date of termination of March 24, 2017 pursuant to the Notice of Termination.

14. Tenant held over after the expiration of the term of the Lease on March 24, 2017 and did not vacate the Premises until May 30, 2017.

15. Pursuant to Articles 21 and 60 of the Initial Lease, in the event that Tenant holds over after the expiration or sooner termination of the term of the Lease, then Tenant is liable to Landlord for liquidated damages of two (2) times the average monthly installment of fixed annual rent and additional rent payable under the Lease during the last month of the term thereof.

16. The monthly installment of fixed annual rent payable under the Lease during March 2017 was $46,172.13.

17. The additional rent payable under the Lease during March 2017 was $1,902.60.

18. Two (2) times the fixed annual rent and additional rent payable under the Lease during March 2017 is $96,149.20.

19. Pursuant to Articles 21 and 60 of the Initial Lease, Tenant remains indebted to Landlord for the liquidated damages and/or use and occupancy in the following amounts for the following months: (i) April 2017: $49,977.07 ($46,172.13 in fixed annual rent and $3,804.94 in additional rent), (ii) May 2017: $96,149.20 (as set forth at length in paragraph 17, above), and (iii)

3

June 2017: $46,172.13 in fixed annual rent (and additional rent in an amount to be determined).

20. Tenant is also indebted to Landlord for additional rent/ water and sewer charges for May 2017 in the sum of $14,190.04.

21. Pursuant to paragraph 1 of the Guarantee, Guarantor guaranteed to Landlord the prompt and full performance and observation by Tenant of Tenant's obligation "to pay rent, additional rent and any charges (or damages in lieu thereof) <u>and the performance of all other obligations of Tenant accruing under the Lease</u> …. [emphasis added].

22. The sum of the amounts due under paragraphs 19 and 20 totals $206,488.44.

23. Paragraph 1 of the Guarantee further states that:

> Notwithstanding anything contained herein to the contrary, the Guarantor's aforesaid obligations shall be limited to the period of time from the commencement date of the Lease until such time as possession of the Premises is delivered to Owner, vacant, free of all occupants and in the condition required under the Lease as if such date were the date originally set forth the expiration of the term thereof (the "<u>Guarantee Period</u>") … provided that Tenant delivers to Owner written notice of its intention to vacate the Premises at least sixty (60) days prior to its delivery of possession to Owner in the manner described above.

(internal quotations and underlining in original)

24. Pursuant to the Guaranty, by letter dated April 13, 2017 (the "<u>Notification Letter</u>") Tenant gave notice to Landlord stating that Tenant "intends to vacate and surrender the Premises on or before Friday June 16, 2017".

25. The Premises have been vacant since May 30, 2017

26. The Premises have not been relet to date.

27. As a result of the foregoing, Guarantor is liable to Landlord for damages in the sum of $ 206,488.44 through June 2017

4

## AS AND FOR A SECOND CAUSE OF ACTION

28. Landlord repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 27, above, as if fully set forth at length herein.

29. Article 21 of the Initial Lease requires that Tenant, upon the expiration of the term of the Lease or other earlier termination thereof, "shall quit and surrender to Owner the demised premises, broom clean, in good order and condition, ordinary wear and tear excepted" and as otherwise required by the terms and conditions of the Lease.

30. Upon Tenant's vacatur and surrender of the Premises on May 30, 2017, the Premises were not, as required by the Guaranty, "in the condition required under the Lease as if such date were the date originally set forth the expiration of the term thereof".

31. As of May 30, 2017, the violations set forth in the Notice to Cure remained uncured.

32. The violations set forth in the Notice to Cure remain uncured to date.

33. Accordingly, the damages of Two (2) times the fixed annual rent and additional rent payable under the Lease during March 2017 remain in effect and the "Guarantee Period", as that term is defined in the Lease, has not expired.

34. As a result of the foregoing, in addition to Guarantor remaining liable to Landlord under the Guarantee for the obligations of the Tenant for $206,488.44, Guarantor is also liable to Landlord for: (i) $46,172.13 for June 2017 and (ii) the remainder of the term of the Lease from and after June 17, 2017 through and including October 31, 2017 in a sum of not less than $430,768.93.

5

## AS AND FOR A THIRD CAUSE OF ACTION

35. Landlord repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 34 above, as if fully set forth at length herein.

36. Paragraph 18 of the Initial Lease states in pertinent part that, *inter alia*, in the event of the early expiration or termination of the term of the Lease, then Landlord may, relet the Premises and:

 (i) "grant concessions or free rent" to any subsequent tenant; and

 (ii) in computing its damages as against Tenant, Landlord may include: "such expenses as [Landlord] may incur in connection with re-letting such as legal expenses, reasonable attorneys' fees, brokerage, advertising and for keeping the premises in good order or for preparing same for re-letting", including but not limited to the costs of "alterations, repairs, replacements and/or decorations in the demised premises as [Landlord], in [Landlord's] sole judgment considers advisable and necessary for the purpose of reletting the demised premises…."

37. In re-letting the Premises, Landlord has incurred and/or will incur costs and expenses under the foregoing provisions of the Lease in an amount to be determined at trial but believed to be no less than $500,000.00.

38. By reason of the foregoing, Guarantor is liable to Landlord in an amount to be determined at trial but believed to be no less than $500,000.00, plus interest as provided under the Lease.

## AS AND FOR A FOURTH CAUSE OF ACTION

39. Landlord repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 38, above, as if fully set forth at length herein.

40. Pursuant to the paragraph 19 of the Lease, in the event that Tenant defaults under

6

the terms of the Lease then Tenant is liable to Landlord for the attorneys' fees, expenses and disbursements that it incurred as a result of any such default by Tenant. Paragraph 1 of the Guarentee also states that the Guarantor shall "pay all expenses, including reasonable legal fees and disbursements paid or incurred by Owner in seeking to enforce this guarantee"

41. Tenant defaulted under the Lease in Tenant's alteration, maintenance, repair and/or operation of the Premises which resulted in, inter alia, that certain litigation in United States District Court, Southern District of New York, entitled Terrell Thomas v. Grunberg 77 LLC and 359 Columbus Avenue LLC in which Landlord is a party defendant (the "ADA Litigation").

42. Landlord has incurred attorneys' fees, expenses and disbursements in the ADA litigation.

43. To date, Landlord's attorney's fees, expenses and disbursement in the ADA litigation which remain unreimbursed equal or exceed $16,458.92.

44. Tenant also defaulted under the Lease by holding over in the Premises after the expiration of its term on March 24, 2017, which resulted in Landlord commencing a summary holdover proceeding entitled Grunberg 77 LLC v. 359 Columbus Avenue, L.L.C. (L&T Index No. 59134/17) (the "Holdover Proceeding").

45. Landlord has incurred attorneys' fees, expenses and disbursements in the Holdover Proceeding in an amount to be determined.

46. The Holdover Proceeding, the ADA Litigation and the above captioned matter are currently pending and Landlord continues to incur attorney's fees, expenses and disbursements.

47. Landlord has incurred attorney's fees, expenses and disbursements in this action.

48. By reason of the foregoing, pursuant to the Guaranty Landlord is entitled to

recover as damages from Guarantor attorneys' fees, expenses and disbursements: (i) in an amount not less than $16,458.92 through May 2017, in connection with the ADA Litigation, as well as any future attorneys' fees costs, expenses, interest which may be incurred by Landlord in the ADA Litigation, (ii) in an amount to be determined in connection with the Holdover Proceeding but not less than $30,000.00and (iii) in an amount to be determined in this action but not less than $50,000.00.

## AS AND FOR A FIFTH CAUSE OF ACTION

49. Landlord repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 48, above, as if fully set forth at length herein.

50. Pursuant to Articles 8 and 20 of the Initial Lease, Tenant agreed to indemnify and hold Landlord harmless against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Landlord shall not be reimbursed by insurance, including reasonable attorney's fees, paid, suffered or incurred as a result of any breach of the Lease by Tenant and/or Tenant's holding over after the expiration of the term of the Lease.

51. As a result of Tenant's defaults under the Lease as set forth in the Notice to Cure, Landlord was prevented from performing certain work at the Building and Landlord has suffered the following damages:

> A. Landlord was materially prejudiced in that it was caused to wait to recoup its out-of-pocket expenditures for capital improvements made to the Building for the protracted, less favorable period mandated for buildings in New York City having thirty-six (36) or more apartments; and

> B. Landlord was been unable to renovate vacant, "free market" apartments in the residential portion of the Building, thereby reducing, on an ongoing basis, the lawful rentals for each such apartment at the rate of approximately $500 to $1,000 per month for each such apartment.

52. Landlord has been damaged as result thereof in a sum to be determined, but not less than $1,000,000.00

53. In addition to the foregoing, Tenant failed to cure the specific violations as set forth in paragraph 9 herein and, more generally those violations set forth in the Notice to Cure, thereby violating Article 21 of the Initial Lease.

54. Landlord has been damaged as result of Article 21 of the Initial Lease in a sum to be determined, but not less than $800,000.00.

55. As a result of the Tenant's holding over and failure to cure the matters identified in the Notice to Cure, Landlord was also unable to lease the Premises for over six (6) months and, *inter alia*, Landlord was unable to consummate a transaction proposed in a *bona fide* term sheet received from one of the most prominent retail brokerage firms in Manhattan on behalf of a well-known retail food group to lease the Premises at an annual rental beginning at $372,000.00 per annum with increases at the rate of three (3%) percent per annum, representing damages to Landlord of at least $217,000.00.

56. The sum of the amounts due under paragraphs 52, 54 and 55 totals no less than $2,017,000.00 in addition to reasonable attorney's fees.

57. Pursuant to paragraph 1 of the Guarantee, Guarantor agreed to absolutely and unconditionally guarantee the payment to Landlord of the foregoing damages.

9

**WHEREFORE,** Landlord demands judgment against Guarantor as follows:

a) on the first cause of action, the sum: (i) of $206,488.44 through June 2017 plus interest upon all of the foregoing;

b) on the second cause of action, in a sum of not less than $430,768.93 plus interest thereon;

c) on the third cause of action in an amount to be determined at trial but believed to be no less than $500,000.00, plus interest thereon;

d) on the fourth cause of action, damages (i) in an amount to be determined but not less than $96,458.92, plus interest thereon;

e) on the fifth cause of action, damages in the sum of $2,017,000.00 plus interest and attorney's fees thereon;

f) statutory costs, disbursements together with such other and further relief as to this court may seem just and proper.

Dated: New York, New York
June 27, 2017

                                          CYRULI SHANKS HART & ZIZMOR LLP
                                          *Attorneys for Plaintiff*
                                          By: _____
                                          Robert J. Cyruli, Esq.
                                          420 Lexington Avenue, Suite 2320
                                          New York, New York 10170
                                          (212) 661-6800

## **CERTIFICATE OF SERVICE**

I, Craig M. Cepler, of Yankwitt LLP, hereby certify that on July 24, 2017, I caused the foregoing Notice of Removal to be served by first-class mail upon the following:

> Robert J. Cyruli, Esq.
> Cyruli Shanks Hart & Zizmor LLP
> 420 Lexington Avenue, Suite 2320
> New York, NY 10170
> *Attorneys for Plaintiff*

Dated: White Plains, New York
July 24, 2017

_____
Craig M. Cepler