UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

GRUNBERG 77 LLC,

                    Plaintiff,              17 Civ. 5627 (RWS)

        -against-                           OPINION

B.R. GUEST PARENT HOLDINGS, LLC,
and 359 COLUMBUS AVENUE, L.L.C,
(D/B/A ISABELLA'S)

                    Defendants.

------------------------------------X

APPEARANCES:

        Attorneys for Plaintiff

        KEANE & BEANE
        445 Hamilton Avenue, 15th Floor
        White Plains, NY 10601
        By:  Edward J. Phillips


        Attorneys for Defendants

        LAW OFFICES OF YANKWITT LLP
        140 Grand Street, Suite 501
        White Plains, NY 10601
        By:  Russell Marc Yankwitt, Esq.
             Craig Matthew Cepler, Esq.


SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/15/18

**Sweet, D.J.**

Defendants B.R. Guest Parent Holdings, LLC ("Guarantor" or "B.R. Guest") and 359 Columbus Avenue, LLC ("Tenant") (collectively, the "Defendants") have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss in part the Second Amended Complaint ("SAC") of Plaintiff Grunberg 77 LLC ("Plaintiff" or "Landlord"). Based on the conclusions set forth below, the motion of the Defendants is denied.

## I. Prior Proceedings

This diversity action arises out of a lease dated January 24, 2007 between Plaintiff's and Tenant's respective predecessors-in-interest for the premises comprising the former Isabella's restaurant at 359 Columbus Avenue, New York, New York (the "Lease Agreement"). *See* Defs.' Ex. A. Defendant B.R. Guest is a guarantor of Tenant's obligations under the Lease Agreement pursuant to terms of a guarantee agreement (the "Guarantee"). *See* Defs.' Ex. B.

The SAC asserts claims for reimbursement of legal fees, expenses and disbursements Plaintiff allegedly incurred in defending two lawsuits brought by an Isabella's patron against

2

both Plaintiff and Tenant and alleging, *inter alia*, that the premises' public entrance was not handicap accessible as required by the Americans with Disabilities Act, as well as New York State and City law (the "ADA Action"). SAC ¶¶ 59-74.

On June 27, 2017, Plaintiff filed its initial complaint in the Supreme Court of the State of New York, County of New York. On July 24, 2017, Defendants removed the case to federal court on diversity grounds. On August 18, 2017, Plaintiff filed its Amended Complaint. On April 26, 2018, Plaintiff filed its SAC, which includes the claims addressed in this motion in the Seventh and Eighth Causes of Action.

The motion to dismiss the Seventh and Eighth Causes of Action in the SAC were heard and marked fully submitted on June 6, 2018.

## II. **Facts**

### a. **The Lease Provisions**

Under the terms of the Lease Agreement, Tenant, which formerly operated the restaurant Isabella's at the demised

3

premises, was responsible for complying with all applicable laws concerning its use and occupancy of the space.

For example, Paragraph 6 of the Lease Agreement obligated Tenant, at its sole cost and expense, to:

> "[P]romptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards . . . with respect to the demised premises building if arising out of Tenant's use or manner of use of the premises, and with respect to the portion of the sidewalk adjacent to the premises . . . whether or not arising out of Tenant's use or manner of use thereof, or with respect to the building if arising out of Tenant's use or manner of use of the premises or the building (including the use permitted under the lease)." Defs.' Ex. A ¶ 6.

Additionally, Paragraph 42(C) of the Lease Agreement provided that any alterations to the premises undertaken by Tenant "be done in compliance with . . . all applicable laws, ordinances, directions, rules and regulations of governmental authorities having jurisdiction, including, without limitation,

4

the Americans with Disabilities Act of 1990 and New York City Local Law No. 57/87." *Id.* ¶ 42(C).

The terms of the Lease Agreement also describe certain maintenance obligations on the part of Tenant and Landlord.

Paragraph 51 provided that Tenant would be responsible for maintaining all exterior doors to the restaurant premises "in good order and condition and repair," and stated that "Tenant covenants and agrees that it will repair and replace whenever necessary, at its own cost and expense, all exterior doors leading to the Premises, and fittings appurtenant thereto, including front door assemblies, jambs, transoms, checks and hardware." *Id.* ¶ 51.

Under Paragraph 49(D), Grunberg's maintenance obligations were as follows:

> "Landlord shall, at its sole cost and expense, maintain and repair the roof, the common and public areas and structural portions of the Building and all Building systems and equipment which are not exclusively serving the Premises and which are located outside of the Premises." *Id.* ¶ 49(D).

The Lease Agreement likewise set out a defense and indemnity provision in favor of Grunberg. Paragraph 8 of the Lease Agreement stated in relevant part:

> "Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall not be reimbursed by insurance, including reasonable attorney's fees, suffered or incurred as a result of any breach by Tenant . . . of any covenant or condition of this lease." *Id.* ¶ 8.

Paragraph 8 of the Lease Agreement further provided that:

> "[I]n case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by counsel approved by Owner in writing, such approval not to be unreasonably withheld." *Id.*

Defendant B.R. Guest's responsibilities are described in the Guarantee, which stated in relevant part as follows:

> "[Guarantor], acting as surety hereby absolutely and unconditionally, for itself and its legal representatives, successors and assigns, guarantees to Owner and to its legal representatives, successors, and assigns, the prompt and full performance and observance by the Tenant and by its legal representatives, entities, successors and assigns of Tenant's obligation to pay rent, additional rent and any charges (or damages in lieu thereof) and the performance of all other obligations of Tenant accruing under the Lease." Defs.' Ex. B ¶ 1.

The Guarantee also provided for a "Guarantee Period," which limited the Guarantor's obligations as follows:

> "Notwithstanding anything contained herein to the contrary, the Guarantor's aforesaid obligations shall be limited to the period [of] time from the commencement date of the Lease until such time as possession of the Premises is delivered to Owner vacant, free of all occupants and in the condition

7

required under the Lease as if such date were the date
originally set for the expiration of the term thereof
(the "Guarantee Period") without regard to any rent
acceleration provisions under the Lease, provided that
Tenant delivers to Owner written notice of its
intention to vacate the Premises at least sixty (60)
days prior to its delivery of possession to Owner in
the manner described above . . . . In the event that
Tenant fails to so deliver the aforementioned notice,
then this guarantee shall be for the full performance
of the Lease throughout the term thereof from the
commencement date of the Lease through the sixtieth
(60th) day following delivery of the Premises to Owner
vacant and free of all defaults and occupants in the
condition required in the lease." *Id.*

With respect to Tenant's surrender of the premises
within the Guarantee Period, Paragraph 60 of the Lease Agreement
stated in relevant part:

"Tenant hereby indemnifies and saves Owner harmless
from and against any and all claims, costs, losses and
liabilities resulting from any delay by Tenant
whatsoever in timely surrendering possession of the

8

Premises in compliance with all of the terms, covenants and conditions of this Lease . . . . Tenant acknowledges and agrees that the damage to Owner as a result of any such failure by Tenant will be significant and will exceed the monthly installment of fixed annual rent and additional rent previously payable under this Lease, and will likely be incapable of accurate measurement. As a consequence thereof, Tenant agrees that in the event of such failure by Tenant as set forth at length above, at the option of Owner in lieu of the indemnity set forth above, Tenant shall pay to Owner as liquidated damages for each calendar month and for each portion thereof after the expiration or sooner termination of the term of this Lease until such time as Tenant surrendered to Owner possession of the Premises in compliance with all of the terms, covenants and conditions of this Lease, a sum equal to two (2) times the average monthly installment of fixed annual rent and additional rent payable under this Lease during the last month of the term hereof. The provisions of this Paragraph shall survive the expiration or sooner termination of the term of this Lease." Defs.' Ex. A ¶ 60.

9

Thus, Paragraph 60 of the Lease Agreement stated that, upon the termination of the Lease either pursuant to the expiration of its term or Tenant's earlier surrender of possession, Tenant was obligated to surrender the demised premises "in compliance with all of the terms, covenants and conditions of this Lease." *Id.*

## b. Related Actions

On March 13, 2015, an action was filed against Grunberg and Tenant in the Southern District of New York. *See Thomas v. Grunberg 77 LLC and 359 Columbus Avenue, LLC*, 15 Civ. 1925 (GBD) (*"Thomas I"*). The complaint in *Thomas I* alleged that a designated wheelchair entrance to the restaurant serviced by a portable wheelchair ramp, power-actuated door, and accessibility signage (the "Wheelchair Entrance") had been bolted shut and rendered inoperable. Defs.' Ex. D ¶¶ 1-2. The *Thomas I* complaint also alleged that numerous interior features of the restaurant violated ADA requirements with respect to aisle widths, seating and standing spaces, maneuvering spaces and other physical constraints. *Id.* ¶ 26.

Upon receipt of the *Thomas I* complaint, Grunberg demanded that Tenant (i) cure any unlawful condition relating to

10

the Wheelchair Entrance; and (ii) defend and indemnify Grunberg, as required under the Lease Agreement. Pl.'s Ex. 3, ¶ 16. In response, Tenant proposed that its counsel jointly defend both itself and Grunberg. *Id.* ¶ 20. Grunberg declined Tenant's offer of joint legal representation and advised Tenant that the parties had conflicting interests insofar as responding to the *Thomas I* lawsuit. *Id.* ¶ 21.

Tenant contended the door to the Wheelchair Entrance was outside of the demised premises, and within the exclusive control of Landlord, because the terms of the Lease restricted Tenant to making "nonstructural interior alterations" that are "in the Premises" and that "do not affect the Building structure," among other things. *Id.* ¶ 37. While Tenant denied having conducted any construction work on the Wheelchair Entrance, Tenant admitted to making improvements to it. *Id.* ¶ 33-34. Specifically, Tenant acknowledged that it attempted to improve the accessibility of the Wheelchair Entrance by purchasing a portable ramp and installing an automatic door opener, buzzer, and accessible signage. *Id.* Tenant likewise conceded that the Wheelchair Entrance exclusively served the restaurant premises, and that the residential portion of the building could not be accessed through any portion of the restaurant premises. *Id.* ¶ 36.

During discovery in *Thomas I*, Grunberg learned that an organization known as the Disability Rights Advocates ("DRA") had threatened to bring litigation against Tenant in 2011 based upon DRA's contention that the Wheelchair Entrance did not comply with applicable legal requirements regarding access for disabled individuals. *Id.* ¶¶ 38-39. In response to the DRA's threat, Tenant retained, at its sole cost and expense, an architectural firm called Metzger/Metzger Associates ("M&M") to design a permanent wheelchair ramp for the restaurant. *Id.* ¶ 40. M&M generated at least four different architectural plans depicting alternative locations and designs for a permanent wheelchair ramp at the restaurant premises. *Id.* ¶ 43. Tenant proposed to Grunberg the only design that Tenant felt was feasible. *Id.* ¶ 47. This plan showed a permanent ramp running in an easterly direction towards the main doorway for the residential portion of the building. *Id.* ¶ 47-48. In requesting Grunberg's approval of this plan, Tenant advised Grunberg:

> "These drawings show the ramp construction we are
> proposed to build in order to comply, in part, with
> the requirement for the Americans with Disabilities
> Act of 2010." *Id.* ¶ 49.

Grunberg rejected Tenant's plan out of concern that it would have created ingress/egress conflicts with the entrance to the residential portion of the building, and it encouraged Tenant to develop alternative design options. *Id.* ¶ 50-51. However, Tenant never pursued any alternative ramp designs with Grunberg and instead continued to utilize a temporary ramp at the Wheelchair Entrance. *Id.* ¶ 52.

Tenant never requested that Grunberg pay for any portion of a permanent wheelchair ramp installation at the restaurant. *Id.* ¶ 41. Grunberg claims that it did not learn about DRA's communications with Tenant concerning the Wheelchair Entrance until Tenant produced emails and correspondence between DRA and Fox Rothschild, LLP during discovery in *Thomas I*. *Id.* ¶ 45.

In *Thomas I*, motions were filed relating to the plaintiff's claims alleging ADA violations on the interior of its former restaurant. During oral argument on those motions, Tenant's counsel, Ernest E. Badway, stated the following:

> "[W]e're not disputing the fact that we would defend [Grunberg]. We're not running away from that . . . . [J]ust so the record is clear, we're also not running

away from the fact that my client, the tenant

Isabella's, is responsible for the interior of the

premises. No one is running away from that." Pl.'s Ex.

4.


On July 28, 2017, District Judge Daniels dismissed

*Thomas I* without prejudice for lack of subject matter

jurisdiction, as the plaintiff's ADA claim had become moot once

Tenant vacated the demised premises and its restaurant was

permanently closed. Defs.' Ex. C.


Concurrently with the *Thomas I* litigation, Grunberg

and Tenant were addressing a number of Tenant's open work

permits and a violation that had been lodged against the

property by the New York City Landmarks Preservation Commission

(the "LPC Violation"). Pl.'s Ex. 1 ¶ 14. The pendency of the LPC

Violation and open permits caused the New York City Department

of Buildings to block Grunberg from obtaining any building

permits to perform new work on the residential floors of its

building. *Id.* ¶ 77.


By Notice to Cure, dated February 2, 2017, Grunberg

demanded that Tenant cure its defaults under the Lease,

including, but not limited to, the LPC Violation. *Id.* ¶¶ 13-14.

14

When Tenant failed to cure its defaults, Grunberg terminated the Lease effective as of March 24, 2017. *Id.* ¶¶ 15-16. Grunberg then commenced a summary holdover proceeding in Civil Court, New York County, to remove Tenant from possession of the premises and recover damages. *See Grunberg 77 LLC v. 359 Columbus Avenue, LLC* (L&T Index No. 59134/17) (the "Holdover Proceeding").

On June 27, 2017, Grunberg commenced an action in the Supreme Court, New York County, seeking damages against B.R. Guest as guarantor under the Lease. *See* Notice of Removal Ex. A. Guarantor removed the action to this Court. *See* Notice of Removal. Grunberg subsequently filed an Amended Complaint that named Tenant as an additional defendant. *See* Dkt. No. 12.

On October 26, 2017, the plaintiff in *Thomas I* filed a new action against Grunberg, Tenant and Guarantor in the Supreme Court, New York County, alleging claims under the New York State Human Rights Law and New York City Administrative Code. *See Thomas v. Grunberg 77 LLC, B.R. Guest Holdings LLC and 359 Columbus Avenue, LLC*, 159556/2017 ("*Thomas II*"). Defs.' Ex. E. The complaint in *Thomas II* challenged the accessibility of Tenant's restaurant on multiple grounds and alleged, among other things, the following:

15

(1) "Numerous architectural barriers existed at defendants' place of public accommodation that prevented and/or restricted access to plaintiff, a person with a disability." *Id.* ¶ 17.

(2) "Plaintiff desired to access the entire Isabella's premises but was deterred from doing so due to architectural barriers." *Id.* ¶ 20.

(3) "The services, features, elements and spaces of defendants' place of public accommodation were not readily accessible to, or usable by plaintiff as required by the Administrative Code § 27-292 *et seq.*" *Id.* ¶ 21.

(4) "Because of defendants' failure to comply with the above-mentioned laws, including but not limited [to] the Administrative Code, plaintiff was unable to enjoy safe, equal and complete access to defendants' place of public accommodation." *Id.* ¶ 22.

The *Thomas II* action was still pending at the time the instant motion was filed. Phillips Decl. in Opp., ECF No. 45, at 13.


III.    **The Applicable Standard**

16

On a Rule 12(b)(6) motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 556). Put differently, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted).

While "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'" *Munoz-Nagel v. Guess, Inc.*, No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *3 (S.D.N.Y.

17

Apr. 30, 2013) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). However, the pleadings "must contain something more than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (citation and internal quotation omitted).

In resolving a motion to dismiss, courts may consider not only the documents attached to the complaint as an exhibit or incorporated in it by reference, but also documents that were "integral to the plaintiff's claim," so long as the plaintiff had notice of their contents. *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989).

## IV.   The Motion to Dismiss is Denied

The Seventh and Eighth Causes of Actions in the SAC seek reimbursement of the attorney's fees, expenses and disbursements that Grunberg incurred in *Thomas I* and the Holdover Proceeding, and which Grunberg has incurred and continues to incur in *Thomas II*. Such relief is sought against Tenant in the Seventh Cause of Action, and against Guarantor in the Eighth Cause of Action. In addition, Grunberg's Seventh and Eighth Causes of Action seek reimbursement of its attorney's

fees, expenses and disbursements incurred in the instant action as against Tenant and Guarantor, respectively.

Defendants contend that Grunberg was solely responsible for ensuring that a public entrance to Tenant's former restaurant was ADA compliant, and that Grunberg is not entitled to recover its attorney's fees, expenses and disbursements incurred in defending *Thomas I* and *Thomas II*. Defendants likewise contend that Guarantor cannot be held liable under the terms of the Guarantee for Grunberg's attorney's fees, expenses and disbursements incurred in *Thomas II* because those costs were incurred after the Guarantee Period had terminated. Defendants' motion does not purport to challenge Grunberg's entitlement to seek recovery of its reasonable attorney's fees, expenses and disbursements incurred in the Holdover Proceeding or the instant action.

However, under Paragraphs 6 and 51 of the Lease Agreement, Tenant had the contractual obligation to ensure that its former restaurant was wheelchair accessible. Paragraph 6 of the Lease Agreement obligated Tenant to comply with "all present and future laws . . . with respect to the building if arising out of Tenant's use or manner of use of the premises or the building (including the use permitted under the lease)." Defs.'

19

Ex. A ¶ 6. Under Paragraph 51 of the Lease Agreement, Tenant was responsible for maintaining all exterior doors to the restaurant premises "in good order and condition and repair." *Id.* ¶ 51. Paragraph 51 also stated that "Tenant covenant[ed] and agree[d] that it [would] repair and replace whenever necessary, at its own cost and expense, all exterior doors leading to the Premises, and fittings appurtenant thereto, including front door assemblies, jambs, transoms, checks and hardware." *Id.* These provisions establish that the exterior doors to Tenant's former restaurant were part of its leasehold and within its possession and control.

Furthermore, under Paragraph 42(C) of the Lease Agreement, Tenant was responsible for ensuring that "[a]ll alterations" at the premises complied with "all applicable laws . . . including, but without limitation, the Americans with Disabilities Act of 1990." Defs.' Ex. A ¶ 42. In *Thomas I*, Tenant admitted to having "made improvements . . . to increase [the] accessibility [of the Wheelchair Entrance] by purchasing a portable ramp and installing an automatic door opener, buzzer and accessible signage." Pl.'s Ex. 3 ¶ 32.

Finally, Paragraph 8 of the Lease Agreement contains a defense and indemnity provision, which provided in relevant part

that "Tenant shall indemnify and save harmless Owner against and from all liabilities [ . . . ] suffered or incurred as a result of any breach by Tenant [ . . . ] of any covenant or condition of this lease." Defs.' Ex. A ¶ 8. Paragraph 8 further stated that "in case any action or proceeding is brought against Owner by reason of any such claim, Tenant upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by counsel approved by Owner." *Id.*

In support of their motion to dismiss, Defendants focus on Paragraph 49(D) of the Lease Agreement, which addresses Grunberg's obligation to maintain the building's roof and other common areas, systems and equipment. That paragraph stated, in relevant part:

> "Landlord shall, at its sole cost and expense,
> maintain and repair the roof, the common and public
> areas and structural portions of the Building and all
> Building systems and equipment which are not
> exclusively serving the Premises and which are located
> outside of the Premises." *Id.* ¶ 49(D).

The Wheelchair Entrance is not the roof, a building system, or building equipment, and it served Tenant's former restaurant, rather than a common area of the building.

Based on these provisions of the Lease Agreement, the SAC pleads a viable claim against Tenant for reimbursement of Grunberg's reasonable attorney's fees, expenses and disbursements incurred in connection with *Thomas I* and *Thomas II*.

In addition, the SAC pleads a viable claim against Guarantor for reimbursement of Grunberg's reasonable attorney's fees, expenses and disbursements incurred in connection with *Thomas I* and *Thomas II*.

Pursuant to the terms of the Guarantee, Guarantor's obligations could terminate only when "possession of the Premises [was] delivered to Owner vacant, free of all occupants and in the condition required under the Lease as if such date were the date originally set for the expiration of the term thereof." Defs.' Ex. B. ¶ 1. The Lease Agreement required Tenant to deliver possession of the premises "in compliance with all of the terms, covenants and conditions of th[e] Lease." Defs.' Ex. A ¶ 60. The SAC alleges that Tenant surrendered the premises to

22

Grunberg with uncured lease defaults, including the LPC Violation. SAC ¶ 15. As such, Guarantor's obligations under the Guarantee remained in effect after Tenant's surrender on May 30, 2017.

Guarantor also remained liable under the Guarantee after Tenant's surrender of the premises on May 30, 2017 because Tenant did not provide Grunberg with 60 days' notice of its intention to vacate the premises in the condition required under the Lease Agreement. The SAC alleges that Tenant gave notice of its intention to surrender on April 13, 2017, but actually vacated the premises on May 30, 2017. SAC ¶ 21-22. The Guarantee provides that Guarantor remains liable "for the full performance of the Lease throughout the term thereof from the commencement date of the Lease through the sixtieth (60th) day following delivery of the Premises to Owner vacant and free of all defaults and occupants in the condition required in the Lease." Defs.' Ex. 1 ¶ 1.

Furthermore, guaranties "are commonly understood to apply to obligations which accrue prior to the surrender of the lease premises, and this obligation, once accrued, persists even after surrender of the premises." *Russo v. Heller*, 80 A.D.3d 531, 531-32 (2011) (citations omitted). Consequently, even if

23

Guarantor's obligation under the Guarantee terminated upon Tenant's surrender of the premises on May 30, 2017, Guarantor would still be liable for the claims asserted in *Thomas II*, which are predicated upon Tenant's use and occupancy of the premises *prior* to its surrender.

## V. Conclusion

For the foregoing reasons, the Defendants' motion to dismiss is denied.

It is so ordered.

**New York, NY**
**November 5, 2018**

ROBERT W. SWEET
**U.S.D.J.**